(No. 91-CV-0844—■)

*In re* APPLICATION OF JAMES NEAL

*Order filed January 10, 1991.*
*Order filed March 24, 1992.*

JAMES NEAL, *pro se*, and RUSSELL J. STEWART, for Claimant.

NEIL F. HARTIGAN and ROLAND W. BURRIS, Attorneys General (JAMES MAHER III, Assistant Attorney General, of counsel), for Respondent.

ORDER

SOMMER, J.

This claim arises out of an incident that occurred on September 23, 1989. The Claimant, James Neal, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill. Rev. Stat. 1987, ch. 70, par. 71 *et seq.*

This Court has carefully considered the application for benefits submitted on October 18, 1990, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That on September 23, 1989, the Claimant was shot, allegedly by an offender who was known to him. The incident occurred on the street located near 1859 West Belmont, Chicago, Illinois. The alleged offender was later apprehended and released from custody when the Claimant informed the investigating police officers that he did not wish to prosecute him.

2. That section 76.1(c) of the Act states that a person is entitled to compensation under the Act if the applicant has cooperated fully with law enforcement officials in the apprehension and prosecution of the assailant.

3. That it appears from the police report that the Claimant declined to cooperate fully with the law enforcement officials in the apprehension and prosecution of the assailant, in that the Claimant informed the investigating police officers that he did not wish to prosecute the alleged assailant.

4. That by reason of the Claimant's refusal to fully cooperate with law enforcement officials in the apprehension and prosecution of the assailant as required by the Act, he is not eligible for compensation thereunder.

It is hereby ordered that this claim be, and is hereby, denied.

## ORDER

PATCHETT, J.

Claimant, James Neal, filed an application with this Court seeking compensation under the Illinois Crime Victims Compensation Act arising out of a serious injury he sustained as a result of a violent crime which occurred on September 23, 1989. Mr. Neal filed his claim on October 18, 1990.

An order was entered by this Court on January 10, 1991, denying this claim based upon the failure of the Claimant to cooperate fully with law enforcement officials in the apprehension and prosecution of his assailant as required by section 76.1(c) of the Act.

On February 7, 1991, the Claimant's attorney advised this Court in writing of the Claimant's request for a hearing and made the following statement, "* * * the Claimant was shot on September 23, 1989. He knew his assailant." See Respondent's Exhibit A.

The sole disputed issue in this case involves whether or not the Claimant cooperated fully with law enforcement officials as required by the Act.

A commissioner of this Court conducted an evidentiary hearing on September 26, 1991. Evidence produced at the hearing established that the Claimant was

indeed the victim of a crime as defined in chapter 7, section 71 *et seq.* of the Crime Victims Compensation Act.

The Claimant was shot on September 23, 1989, in the vicinity of Wolcott and Belmont in Chicago, Illinois. The Claimant was taken by a friend to the Illinois Masonic Hospital after the shooting. The Claimant testified at the hearing that he was interviewed there by personnel from the Chicago Police Department who attempted to determine the identity of the assailant.

The Chicago Police Department made a report of this incident, which was admitted into evidence at the hearing as Claimant's Exhibit No. 1. Chicago police officers Reynolds and Ross responded to the Illinois Masonic Hospital and were told by the victim that, "* * * he knew the man who shot him, that the police should talk to the Claimant's Uncle Travis, and that this was a family matter." At the evidentiary hearing previously referred to, the State introduced the testimony of police officer Greg Reynolds who testified that he was present at the hospital and he asked the Claimant if he knew who shot him. He testified that the Claimant replied by indicating to the officers, "* * * speak to my uncle because he knows about this."

Detective Charles Ford of the Chicago Police Department also testified at the hearing. He spoke to the Claimant at the Illinois Masonic Hospital, and after informing the Claimant that his cousin was in custody, the Claimant said that, "* * * he did not want to further the family feud." Detective Ford testified that it was his understanding, "* * * the Claimant and his cousin had a big fight two days prior to this incident."

The Claimant testified that he never had a conversation with any police officer where he stated, "* * * my

Uncle Travis knows about it, talk to him." The Claimant further denied stating that he did not want to prosecute his cousin, Brian, who was in custody.

However, Officer Ford of the Chicago Police Department testified that on September 25, 1989, he interviewed the Claimant and was told, "* * * I don't want to have anything further to do with the police and don't want to further the family feud." This resulted in the suspect being released from police custody.

In summary, grave doubts were raised as to the credibility of the Claimant. The evidence clearly suggested that the Claimant did in fact know the identity of his assailant and voluntarily chose not to pursue his prosecution. The evidence further suggests that the Claimant made willful misstatements of facts within the meaning of section 90(a) of the Crime Victims Compensation Act, which precludes any recovery in this case.

Therefore, this Court affirms its earlier order denying this claim.